## SUSAN ACKLEY *v.* HEIRS OF MICHAEL LYONS.

Where one of several joint obligors has removed out of the State, he may be made a party to a suit against the obligors by the appointment of a curator *ad hoc.*

Michael Lyons left to his wife the usufruct of certain property. His heirs agreed to give her ten per cent on the value of the property in lieu of her rights of usufruct. A sale of the property was contemplated; but owing to the neglect of the heirs, a portion, viz, a dwelling-house was not sold. The house, was subsequently destroyed by fire, on which account the heirs claimed an exemption from the payment of the ten per cent. *Held:* That the heirs were not thereby exempted from the payment of the stipulated interest.

APPEAL from the Parish of Vermillion, *Voorhies*, J. *Alpheus L. Tucker*, for plaintiff. *D. O. Bryan and Walker*, for defendants. The judgment of the court was pronounced by

PRESTON, J. The plaintiff, on the eve of her marriage with Michael Lyons, on the 1st of April, 1834, entered into a marriage contract with him, by which beside other donations, he gave to her, in case she survived him, the usufruct of the house in which he lived at the time, together with the plantation as it may then be situated, together with the household furniture, that may then exist, to be enjoyed as long as she continues a widow and provided it may suit her to live there; and in the event it may not suit her to remain there, it will return to his heirs.

He died in 1841; and his heirs, the defendants, on the 1st of May, 1841, made a compromise with the plaintiff, in which it is stated that the deceased gave her the usufruct of the plantation on which he lived, together with the buildings, fences and other improvements belonging to the plantation, and also of the household and kitchen furniture; and in order that the lands belonging to the succession of the deceased should be free from any incumbrance whatever, they agreed to give her interest at the rate of ten per cent per annum on the net proceeds of the sale of the buildings, fences, and other improvements belonging to the plantation, and also of the household and kitchen furniture. The payment of the interest was to commence on the 27th of April, 1842, and to continue from year to year; in consideration of which, she abandoned to the heirs, all her claims of whatever kind upon the land belonging to the succession,

The plaintiff was compelled to sue for the interest of 1842, 1843 and 1844. The buildings had not been sold, although the compromise was evidently based upon the supposition, that they should be sold before 1842. They were admitted, for that suit alone, to be worth sixteen hundred dollars, and judgment was rendered for interest on that amount.

She was in like manner compelled to sue for the interest due to her for 1845, 1846 and 1847, and by the consent of the parties, recovered judgment for two hundred and twenty-five dollars per annum for those years.

In this suit, she has been necessitated to sue for the interest of the years 1848, 1849 and 1850. The defendants plead a general denial; but proved, on the trial, that the house had not been sold, but had been burnt two or three years after the sale of the other property of the succession in 1841, and that it could not be sold for the want of bidders.

On this state of facts, the defendants contend, that they are not liable to pay interest on the former value of the house, because it could not be reduced to cash, and was destroyed without their fault, and the defence appears to have prevailed with the district court.

The compromise appears to have resulted most unfavorably to the plaintiff. Her husband had made a comfortable provision for her, in possession, during life. She has been compelled to sue for the interest stipulated in her favor, for the abandonment of her usufruct from year to year, and to sue numerous heirs for their virile shares. Some reside in Texas, and could not be brought into court by personal service, nor by attachment. The plaintiff caused a curator *ad hoc* to be appointed to them, who excepted that it was not a case in which the law authorized the appointment. The court sustained the exception, and the plaintiff was non-suited as to those heirs.

But they are obligors in a joint contract. Now, our code declares, that in every suit, on a joint contract, all the obligors must be made defendants. Having contracted a joint obligation in this State, which it has become necessary to prosecute in this State, and the prosecution of which renders it necessary that the non-residents should be made parties defendants, it is a proper case to cause them to be represented by a curator *ad hoc*, since personal service cannot be made, and the exceptions should have been overruled.

By the compromise, it was the manifest intention of the parties, that the property of which the plaintiff was entitled to the usufruct, should be sold before 1842, and converted into a capital, bearing ten per cent in interest, which interest was to be paid to the plaintiff annually in lieu of her usufruct. The very object of the compromise was, to enable the heirs to sell the whole property without encumbrance, promptly and advantageously. The lands, buildings and improvements, should have been sold together, and an equitable portion of the whole price, established as the capital upon which to calculate the interest to be paid annually to the plaintiff. Equity considers that done which ought to have been done. We cannot imagine how the heirs could conceive they had a right to sell the land separately from the houses and improvements. It necessarily produced the result which has occurred: the improvements were unsalable or valueless; and having been destroyed long after the sale should have been made, and the amount of the plaintiff's annuity exactly fixed, is no reason why the amount of the annuity should not be ascertained by the best means in our power. We have no other data but the estimation of the property, to be converted into capital, as appraised in the inventory. In the two former suits, that appraisement

was, by consent, established as the capital on which the annuity should be paid. Having been established, by judgments, as the capital for six years, we see no reason why it should not be so for the next three years. It is the value of the property to be sold, to fix the capital of the annuity according to an appraisement which the heirs themselves made and had homologated by the court, at the time when the capital should have been fixed, and has been consented to by the defendants in two suits against them. We know of no better criterion to fix the value of the annuity. As there was no limitation of the admission of the value in the last suit, we are inclined to consider it *res judicata* in the present suit.

The position, that the defendants are discharged from the payment of interest, because the house has been destroyed by fire, is untenable. The parties had, by compromise, changed the usufruct of the house to interest on its value, to be ascertained by sale. The sale was to have been made by the defendants, which they neglected to make until accident rendered it impossible, and indeed, until, without the accident, it might not have been a just criterion of the value of the capital. The plaintiff did not surrender the usufruct of the house alone, but also of the land. The consideration of the surrender was not the value of the house in 1851, but of the house in 1841.

We are of opinion that the judgment of the district court should be reversed, and that the plaintiff should recover two hundred and twenty-five dollars annually, or six hundred and seventy-five dollars, with five per cent interest from the judicial demand, and costs of suit in both courts.

Although it was necessary to trial and decision of the suit, that the heirs of *Sarah Lyons* should be made a party by a curator *ad hoc*, yet, as they cannot be brought, by person or property, before the court, we have no power to render judgment against them. As to them, there must be a judgment of non-suit.

It is therefore decreed, that the judgment of the district court be reversed. And it is further decreed, that the plaintiff do recover from the defendants the sum of two hundred and twenty-five dollars annually, or six hundred and seventy-five dollars for the three years of 1848, 1849 and 1850, with five per cent per annum interest thereon, from judicial demand on the defendants respectively, and costs of suit in both courts ; that the plaintiff recover from each of said defendants, his or her virile share of said sum, to wit : from *Aborn Lyons*, the sum of seventy-five dollars, with five per cent interest thereon, from judicial demand; from *Abel Lyons*, the sum of seventy-five dollars, with five per cent interest thereon, from judicial demand; from *Fanny Lyons*, the sum of seventy-five dollars, with five per cent interest thereon, from judicial demand ; from *Nancy Lyons*, wife of *Jacob Harman*, and the said *Harman*, the sum of seventy-five dollars, with five per cent interest thereon, from judicial demand; from *Martha Lyons*, wife of *Johnson Moss*, and the said *Moss*, the sum of seventy-five dollars with five per cent interest thereon, from judicial demand; from *Benjamin Lyons*, the sum of seventy-five dollars, with five per cent interest thereon, from judicial demand; from *Isaac Lyons*, the sum of seventy-five dollars, with five per cent interest thereon, from judicial demand ; from *Bosman Lyons*, the sum of seventy-five dollars, with five per cent interest thereon, from judicial demand, and the further sum of ten dollars with like interest thereon; from *Mary Ann Merryman*, wife of *J. W. Copper*, and said *Copper*, the sum of fifteen dollars with five per cent interest thereon, from judicial demand; from *Martha Merriman*, widow of *King Choate*, the sum of fifteen dollars, with five per cent

interest thereon, from judicial demand; from *Mansel Merriman*, the sum of ACKLEY *v* fifteen dollars, with five per cent interest thereon, from judicial demand ; from LYONS. *Aborn L. Merriman*, the sum of fifteen dollars, with five per cent interest thereon, from judicial demand ; from *Augustus Merriman*, the sum of fifteen dollars, with five per cent interest thereon, from judicial demand. It is further decreed, that the costs of suit in both courts be paid by the defendants *in solido*. And it is further decreed, that the plaintiff be non-suited as to *Richard West*, tutor of the heirs of *Sarah Lyons*, deceased, at her costs.